[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by summons and complaint dated January 25, 1999 in which complaint the petitioning plaintiff sought a dissolution of the marriage, custody, child support, alimony, an allowance to prosecute, a fair and equitable property settlement and such CT Page 1966 other and further relief as law and equity may provide.
The petition was returnable February 16, 1999. Along with the complaint, there was a motion for custody pendente lite, child support pendente lite, alimony pendente lite and a motion for an allowance to prosecute pendente lite.
This motion was granted by the court, Solomon. J., on March 3, 1999.
A motion for an ex parte restraining order pendente lite accompanied the complaint along with the requisite forms incident thereto, an affidavit dated January 25, 1999, the sheriff's return also accompanied the complaint.
The restraining order ex parte was granted by the court, Solomon, J., on January 26, 1999.
The defendant appeared by counsel by appearance filed February 5, 1999.
On February 9, 1999 there was a stipulation undertaken by the parties and their respective counsel setting forth the agreed terms and conditions of the restraining order. The restraining order dealt with possession of the marital residence and matters pertaining to visitation between the defendant and the minor daughter of the parties.
On February 11, 1999 there was filed a request for conciliation and the same was granted on February 18, 1999.
Certain temporary orders were agreed upon by the parties that were filed March 1, 1999 having to do with temporary custody of the minor daughter, the securing of a separate residence by the plaintiff and child support and alimony. These temporary orders dated and filed March 1, 1999 and signed by the parties and their respective counsel provided for unallocated child support and alimony in the amount of $700.00 per week.
Financial affidavits reflecting the financial status of both the plaintiff and the defendant were filed with the court on March 1, 1999.
On N4arch 26, 1999 the defendant filed a pendente lite motion to modify the alimony and support, which does not appear to have been acted upon, and in addition, a pendente lite motion to refer, which was granted by the court, Solomon, J., on March 26, 1999.
On April 22, 1999 the defendant filed a motion for contempt pendente lite, a motion for visitation pendente lite, and subsequently on May 4, CT Page 1967 1999 a motion to lift restraining order. These motions resulted in an agreement signed by the parties whereby the issue of visitation was referred to Family Relations and the referring of the motion for vacating of the restraining order to a date to be determined.
On June 2, 1999 the defendant filed a motion for return of personal property. It does not appear that that motion was acted on.
On July 6, 1999 new counsel appeared for the defendant.
On September 15, 2000 new financial affidavits were filed by the plaintiff and the defendant.
On January 17, 2001 the plaintiff and the defendant and their respective attorneys and witnesses appeared before the court and the matter was heard to a conclusion.
The court makes the following findings of fact.
The plaintiff wife, whose maiden name was Eloise Wheelock, and the defendant were joined in marriage on February 28, 1974 at San Pedro, California.
Both of the parties have resided in this state for more than twelve months next preceding the date of the filing of the complaint.
The marriage between the parties has broken down irretrievably with no reasonable prospect for reconciliation.
There is one minor child issue of this marital relationship whose name is Christine A. Ploen born January 14, 1984.
No other minor children have been born to the plaintiff wife since the date of the marriage.
Neither party has been the recipient of public assistance or welfare from the State of Connecticut or any town, city, municipality or subdivision thereof.
At the beginning of the proceedings, it was represented to the court that the plaintiff and the defendant had entered into a certain document entitled "Stipulation as to Custody" dated January 17, 2001.
This document will be treated in detail and set forth verbatim in a later portion of the memorandum. CT Page 1968
This stipulation touched on custody, visitation, referral to Family Relations in due course and matters of personal property.
The stipulation as to custody and other items is referred to as Joint Exhibit No. 1.
The plaintiff petitioner presently resides on Ekonk Hill Road in the town of Voluntown.
The plaintiff testified that she was not seeking any record interest in the former marital residence located at 21 Deanna Drive inasmuch as title had already been established in the defendant's name and the plaintiff's only claim as to said realty was as concerns a share in the alleged equity of the asset.
The plaintiff was 18 years of age when the parties were joined in marriage.
The parties initially lived in Massachusetts and subsequently moved to Connecticut.
The plaintiff worked for a time for the Waters Manufacturing Company in Connecticut. The move to Connecticut was in July of 1975 and the plaintiff also worked for a firm known as Banco Raymo Corporation for three or four years.
The plaintiff worked as a telephone communications analyst. The plaintiff testified that problems in due course occurred in the marriage where her claims were to the effect that the defendant was a demanding individual and resorted to loud and boisterous comments and speech.
The plaintiff claimed that in 1978 the defendant had struck her in the face resulting in her glasses being broken and she sustaining a bloody nose. After that event, after three or four months, the parties reconciled and the testimony was to the effect that for a period of time and subsequent years that conditions were much improved.
In 1982 the parties moved to California due to a job offer made available to the defendant. While there, the plaintiff worked for Kelly Services for two years.
In September 1984 the parties returned to Massachusetts. In the meantime however, the daughter of the parties had been born in California. CT Page 1969
The plaintiff described the defendant's temper as violent and claimed that he brew things and that there were disagreements with regard to money and the condition in which the home was kept.
The plaintiff's lament was that the defendant complained as concerns the minor daughter, a young child at that time, keeping him awake because of patterns of conduct followed by young children generally in their early years.
In 1986 the parties moved to North Carolina.
There was a problem that arose as concerns the defendant being displeased, according to the plaintiff, as concerns arrangements for a certain dinner party in which ends or business acquaintances apparently were involved.
The plaintiff, apparently during times of heated comments, would tend to withdraw from any colloquy with the defendant.
The parties were in North Carolina for a period of three years.
In December of 1989 the parties returned to Connecticut for a new job in that area offered to the defendant. The parties have been in Connecticut since 1989.
The plaintiff testified that over the years conditions in the relationship between the parties deteriorated.
The plaintiff claimed that the defendant was possessive and required that she advise him continually as to her whereabouts. There was one occasion, according to the plaintiff, where a vase was thrown at her person. The arguments or problems apparently had to do with bills not being timely paid and other financial problems. The plaintiff described the defendant as being an emotional volcano.
In the allocation of duties as between the plaintiff and the defendant, it appears that the plaintiff had the responsibility of maintaining records and paying bills and the defendant provided her with the necessary wherewithal.
At one point in time a family dog was acquired by the defendant, a German Shepard. The plaintiff's testimony was to the effect that the dog was not well treated by the defendant and that the minor daughter was upset as concerns the conduct by the defendant as to the animal. CT Page 1970
At one point in time the plaintiff worked as an accounts receivable clerk. The plaintiff and the defendant went on joint business trips and usually traveled together three or four times a year. Incident to the extensive travel required by the defendant, the parties traveled extensively and have visited foreign locations such as Bali, Australia and in this country, Maine, during the summer months.
The plaintiff's lament was that as time went by the defendant's temper became worse.
According to the plaintiff's testimony, mindful of the extensive travel undertaken by the defendant pursuant to his work, he was away from the home for on average for as many as 200 days a year.
The plaintiff testified that the defendant was restrictive with regard to the friends that he would allow to have visit the home as concerns the minor daughter. The daughter apparently being musically inclined, her practicing on the piano caused friction in the home and according to the plaintiff annoyed the defendant.
The plaintiff's testimony was to the effect that the defendant's use of alcohol was immoderate.
In December of 1998 according to the plaintiff, the minor daughter Christine started to date and this upset the defendant who apparently tried to closely supervise the daughter's conduct so as to keep her feet on the right path.
There was an occasion when, according to the plaintiff, the defendant having consumed spirits exhibited a 45 caliber handgun and waved the same about and, according to the plaintiff, put the weapon to his head. The plaintiff was concerned that irreparable harm might be done, convinced the defendant to put the weapon away and took the defendant to his mother's home where the matter apparently cooled down. A portion of this conduct was apparently witnessed by the minor daughter. The plaintiff suggested counseling.
In January 1999 the plaintiff and the defendant took a trip to Hawaii; the defendant being entitled to the trip by virtue of having made a certain quota insofar as his employment position is concerned.
The plaintiff on the return from that trip undertook then to file a petition looking toward the dissolution of the marital union and as earlier noted the complaint was accompanied with a restraining order. CT Page 1971
The plaintiff vacated the 21 Deanna Drive home in Griswold and sought other quarters.
The plaintiff testified that things are much more stable for herself and the daughter at this time. The plaintiff testified that she and the daughter have been involved in counseling.
The plaintiff also testified that she has sought employment and as of January 3, 2001 the plaintiff has secured a position with a tax and accounting firm designated on her financial affidavit as Bokoff and Bokoff. This position apparently is good through April of this year.
The plaintiff testified that her health generally was good, her education extended through several years in college and some allied courses.
Her age is 45 years.
The plaintiff describes the marriage as being 27 years in length.
As earlier noted pursuant to a stipulation approved by the court, the defendant has been paying $700.00 a week for unallocated alimony and support.
The plaintiff testified that the marriage in fact has broken down irretrievably.
The plaintiff's request was for support in the amount of $378.00. alimony in the amount of $1,000.00 a week and allied requests with regard to other assets.
The plaintiff asks for cooperation from the defendant at such time as the marital Union might be dissolved with regard to health coverage and COBRA.
The plaintiff makes no request for restoration of her maiden name.
The plaintiff requests that the defendant continue medical and allied coverage for the minor child and that the parties respectively be responsible for anything that's unpaid or not covered in accordance with the guideline percentages.
During the conduct of the proceedings it was represented to the court that the parties were in agreement, as was their counsel, that existing life insurance coverage on the life of the defendant should be continued CT Page 1972 during such period of time as the court might determine in due course in its orders as to alimony are subsequently set forth.
As earlier noted, the plaintiff indicates that her health generally is good.
The parties now have been separated for two years.
The plaintiff's present employment with Bokoff and Bokoff commenced about two months ago.
For six years prior thereto, the plaintiff had not been employed.
The plaintiff does have a history in the past as a bookkeeper and presumably would be eligible for jobs in that category.
The minor child Christine is a junior in high school. The child has a driver's license and apparently has the privilege of operating the plaintiff's automobile.
The discipline of the minor daughter has been a problem between the plaintiff and the defendant. They apparently hold somewhat divergent views.
The testimony was to the effect that the home at 21 Deanna Drive in Griswold had been appraised but no written appraisal was offered to the court nor did any expert witness appear to offer an opinion as concerns the value of the same.
The testimony was to the effect that the approximate mortgage balance on the home was $150,000.00.
When the plaintiff vacated the former marital residence, she rented a home where she and the daughter now reside.
The mortgage payments on the Deanna Drive residence are approximately $1,700.00 a month.
The plaintiff testified that the jewelry she has in her possession, which apparently were gifts from the defendant, approximated in value between $12,000.00 and $15,000.00.
The plaintiff testified as to an asset described as Dickens' Village, which was valued at $10,000.00. CT Page 1973
The plaintiff testified that there is a prospective inheritance from her late mother in the amount of 525,000.00 ±.
The plaintiff has a modest IRA plan of her own.
The plaintiff indicated that her IRA at the present is worth between $200.00 and $300.00.
The plaintiff testified that after the prospective termination of her employment with Bokoff and Bokoff in April that she intends to look for other work.
The plaintiff acknowledged that the family dog, which was named Chips, had been put to sleep; this a course of action initiated on her part, which apparently caused the defendant great mental upset and anguish.
It is the plaintiff's claim that a violent temper has been a problem for a period of over 20 years during the marriage. The plaintiff acknowledged that the only time that physical violence was actually visited upon her person was 20 years ago and that this was in the form of a slap to her face notwithstanding her earlier claims.
The plaintiff testified that the triggering mechanism for that conduct was a claim by the defendant that the plaintiff had been involved in an affair and his conduct was precipitated in that atmosphere. The plaintiff denied any marital infidelity.
Finances have apparently been a continuing and long existing problem in this marital union and the testimony indicated that the plaintiff is in charge of the financial record keeping of the parties, issuing of checks and so forth, and that she allowed substantial problems to accrue with regard to unpaid credit cards and the Internal Revenue Service.
The plaintiff acknowledged that the defendant was a very hard worker. The defendant's employment is in the nature of being a representative of a banking software firm and incident to his work he travels all over the world.
The plaintiff indicated that the (defendant has a condition known as sleep apnea. The plaintiff acknowledged that the defendant has serious problems with regard to high blood pressure; that he has held his present job for the last 11 years, and the pace of his work is fast.
The defendant does not have a college education and apparently has achieved his considerable success by virtue of hard work and dedication. CT Page 1974
The plaintiff acknowledged that the vase throwing incident occurred many years ago and acknowledged that the defendant at one point in time had been quite depressed over the fairly recent death of his late parent father and the suicide of a colleague of his.
The plaintiff testified that she sought help and assistance from the family priest.
The plaintiff testified that the restraining order was sought by virtue of her concerns for the welfare of herself and her daughter. Any weapons previously in the possession of the defendant were amicably turned over to the authorities.
The plaintiff acknowledged that since the initiation of the restraining order and for the last two years that there have been no problems with the defendant and in fact the contacts have been relatively small.
The plaintiff acknowledged that the defendant is on a medication known as Ritalin.
It was the plaintiff's claim that the defendant resorted to conduct whereby things were broken on a regular basis. The testimony and exhibits do not seem to suggest that there is merit to that position.
The testimony indicated that the defendant recently visited Germany for the Oktoberfest and also Ireland.
It is unclear whether or not these visits abroad were of the defendant's own inclination or had business-oriented aspects.
The proper firm name for the plaintiff's employment is actually Goldblatt and Bokoff. They are certified public accountants and the plaintiff works as a secretarial receptionist.
The testimony indicated that the plaintiff has already divested herself of her equity record interest in the real estate known as 21 Deanna Drive in Griswold and that counsel for the defendant holds that deed. Formerly the record title of the property had been joint. The subject property was purchased in 1989 for $186,000.00 and the value has dropped considerably since that time. The outstanding and existing mortgage is in the names of both the plaintiff and the defendant.
The plaintiff has a 2001 Toyota automobile which is in her name. The 1995 Ford Taurus reflected on the financial affidavits stands in both CT Page 1975 names as does the title to the Lincoln Town Car. The boat and trailer referred to in one of the financial affidavits stands in the name of the defendant.
As concerns the minor daughter, her present age is 17. The testimony indicated she was in good health, a junior in high school and was doing honors work with regard to her various subjects and courses.
The testimony indicated that there was a trust fund which was established by the defendant's father during his lifetime which provided initially for the defendant's father until he passed away. It now provides for the defendant's mother and upon her death the defendant being the sole trustee, the funds are apparently available for the purpose of education of the minor daughter Christine. No copy of the trust indenture or document was presented to the court.
From the testimony of the witness Cathy Coughlin of 26 Deanna Drive, the court finds that the witness is now and has been a fairly longtime neighbor of the plaintiff and the defendant.
This witness testified that there was only one occasion on which she observed the defendant to be inebriated.
This witness testified that the defendant was not of a violent nature; that the defendant frequently visited the witness' home and had enjoyed meals with them and that based on her observations the defendant was emotionally tearful and unhappy with regard to the problems in the marriage.
From the testimony of the witness Christopher Coughlin of the same address, 26 Deanna Drive, the court finds that this witness would see the defendant on a frequent basis over a fairly long term and that he has never observed the defendant either to drink or be drunk or to be violent.
From the testimony of the defendant. the court finds that he is age 52, being seven years older than the plaintiff; that there has been a fairly wide rift between the plaintiff and the defendant as concerns their guidance of the minor daughter, particularly over the last two years.
As earlier noted, the defendant hasn't seen his daughter for the last two years except for a brief counseling session with a representative of the family relations department of the court. The defendant is desirous of having visitation rights with his daughter. CT Page 1976
The defendant described the child as intellectually and academically brilliant; indicated that there are trust assets available for her benefit upon the passing of the defendant's mother. This, however, presumably in the sole discretion of the defendant as the trustee. The defendant testified to the effect that it was his impression that the trust documents provided for educational safeguards for the minor daughter.
The defendant indicated that he is willing to pay the guideline support for the minor daughter, which would appear to be $378.00 a week.
The defendant verified the monthly mortgage payment on the Deanna Drive property as being in the neighborhood of $1,700.00 a month.
The defendant testified that certain items of jewelry in the possession of the plaintiff had been insured and a number of years ago the valuation thereof had been as much as $12,000.00 and that subsequent thereto the defendant had given the plaintiff a diamond piece of jewelry which cost by itself $4,500.00. It was the defendant's position that the value of the jewelry possessed by the plaintiff was in excess of $20,000.00. No written appraisal of jewelry nor any independent expert testimony by a qualified gemologist was offered to the court with regard to that particular item.
Reference is made to a certain Dickens' Village collection, which allegedly is an item that is actively traded and is in the nature of some sort of a recognized collection.
It was the defendant's position that he would be amenable to an equal division or apportionment of his 401K. The defendant was desirous of keeping his IRA.
The defendant testified that he is not a direct beneficiary of the aforementioned trust and would only receive something in the event of his daughter predeceasing him.
The defendant's education extended through completing high school in 1966. He thereafter went to Wentworth institute for a while in Boston. The defendant received no formal educational training after age 20. He has been a technical troubleshooter in the computer industry.
He was employed for six years at Banco Ramo and compensation that he received in prior years was all markedly less than what is the Present situation as concerns his earnings. CT Page 1977
The defendant has been with his present employer for the last ten years according to his testimony. His employer is listed on the NASDAQ stock exchange.
The defendant affirmed that his job requires his travel all over the world and he operates on a base compensation figure plus commissions.
The customers that he visits or serves are large institutions.
The defendant operates under a yearly commission plan. His employment is at will, so to speak. His base salary is $40,000.00. The defendant's gross for the year 2000 apparently was $197,000.00. The defendant characterized this as being especially high, particularly because of Y2K problems that existed at the end of 1999 and problems that were anticipated in the year 2000.
The defendant's target quota before commissions kick in, has been increased every year of late and are more difficult now to meet.
As representative of an average work week and the travel attendant thereto, the defendant testified that his last trip after leaving his home recently required him to go to Santiago, Chile to Brasilia, to Sao Paolo, Rio De Janeiro and other countries. The defendant testified that he is on average away from his home at least two-thirds of the week and receives, while he is at home, where he maintains an office of sorts, that he receives and makes over 40 business phone calls a day.
The defendant described his work week as approximately 100 hours.
The defendant indicated that he felt that the plaintiff was conversant in bookkeeping and accounting and that was why the record keeping of the parties had been left to her hands, It was the defendant's lament that the plaintiff woefully failed in that respect and failed to keep proper records and account for the funds made available to her for payment of bills and taxes.
As representative of some of the problems testified to by the defendant as concerns the conduct of the plaintiff, the testimony was to the effect that although the plaintiff was charged with looking after and paying the bills and invoices that would come to the home that she allowed the automobile insurance on any vehicles that the parties had to lapse for non-payment for a period of one year without any knowledge on the part of the defendant. CT Page 1978
In addition, there were problems apparently whereby the plaintiff did not make sufficient credit card payments and very substantial interest charges were accrued by virtue of the high percentage rates attendant thereto. As a result thereof, the defendant testified that he lost his American Express Card privileges because the plaintiff had not timely sent in the payments from funds that he provided. This credit card loss occasioned him travel problems.
In addition, there were apparently ongoing problems with the Internal Revenue Service; the most recent of which was in 1998.
On one occasion the defendant observed the plaintiff to place a letter under her sweater after returning from the mailbox. This apparently was a letter from the Internal Revenue Service indicating that the parties' assets would either be seized or frozen by virtue of not having timely taken care of payments or obligations due to the Internal Revenue Service. The defendant testified that on examination it was determined that the Internal Revenue Service had sent three certified letters with regard to their tax situation; none of which he represents were ever brought to his attention by the plaintiff.
The defendant indicated that his health has deteriorated since the passing of his father. He testified he has high blood pressure, a high cholesterol level. The defendant, as earlier noted, travels extensively pursuant to the provisions of his job. As to medication, the defendant testified that he takes Vasotec, two tablets a day, Lipitor, the maximum dosage available, that he is afflicted with sleep apnea which results in a choking problem for him while he is asleep. The defendant testified that he was continually tired and that a certain medical device accompanies him on his travels.
In addition, the defendant testified he is on a medication called Aldoril, allegedly a psychiatric medication. Some of the depression experienced by the defendant was attributable to the passing of a sales associate who committed suicide in the not too distant past. The defendant has arrhythmia of the heart.
The defendant denied the excessive or immoderate use of alcohol.
The defendant admitted the December 1998 sequence of events whereby he had a gun in his hand and put the same to his head. He represented that this was the first time that that had ever happened and that he had no intention to hurt his family and that it was caused by stress.
As noted above, the weapon involved and any other weapons in the CT Page 1979 possession of the defendant were, according to the testimony, turned over and delivered to the authorities.
The defendant testified that he suggested counseling for the plaintiff and himself but apparently that was unavailing.
The defendant represented that the most recent trip to Hawaii in which both of the parties participated was happy; at least in his opinion.
When the defendant is away incident to his travel and employment tasks, he represented that he would call the family every day to keep them apprised as to his situation.
The defendant testified that when the plaintiff left the home and residence that it was a complete surprise to him. He found a note in the premises indicating "we've left".
The plaintiff had the defendant's dog Chips put down and the defendant represented that he was devastated by this course of conduct and had a deep affection for the animal.
In addition, apparently any cats that had been family pets were also gone.
The defendant testified that he has never violated the restraining order, which appears to be so.
The defendant acknowledged reluctantly that the marriage has in fact irretrievably broken down and does not admit of a reconciliation.
The defendant in his demeanor and conduct in court seemed sincere and on many occasions his testimony was tearful.
The defendant acknowledged the one physical incident occurring 20 years ago where, in his words, he struck the plaintiff in the face with an open hand.
It was the defendant's position that the plaintiff has not always been faithful with regards to the marriage vows but nothing more than his representations in that respect were provided to the court.
The defendant admits that infrequently as a result of stress he did break things in the home.
The defendant testified he has never been arrested and that his present CT Page 1980 financial status as to earnings was the best he has ever done.
The defendant expects that the present year will not be nearly as good by virtue of increased percentage quotas that he must meet before any commissions kick in.
The defendant's suggestion to the court insofar as certain financial issues were concerned was that he was willing to help the plaintiff further her education and would provide funds sufficient to secure that.
The defendant says he gets out of breath easily and is apparently greatly overweight.
The defendant's suggestion to the court with regard to the 401K was that it be equally apportioned.
The defendant testified as trustee for the trust established by his late father; that after the passing of his mother irrespective of whether funds of the trust were used for the daughter's education, that in any event, she would be entitled to the proceeds of the trust or the remaining corpus thereof at such time as she attained age 30. As earlier indicated, the court was not provided with a copy of the trust indenture.
One of the defendant's principal laments was that the plaintiff, in his words, consistently lied to him.
The defendant acknowledged that in fact he does have a temper.
He acknowledged that he has terminated a continued finding of his 401K; that he had paid a substantial sum to his counsel and that the plaintiff had used their credit cards in payment of her counsel fees.
Since the separation, the defendant testified he has paid off all of the bills incurred by the plaintiff and there was offered as an exhibit a certain card sent by the defendant to the daughter which will be touched on in due course.
The defendant's additional lament is to the effect that substantial interest charges were incurred because the plaintiff was not paying off the credit cards with funds that were provided and never properly accounted to him as to where the various funds, of which she had control, were disbursed.
On one occasion the defendant testified that the provider of heating CT Page 1981 fuels for the home was about to stop supplying the same and apparently unbeknownst to the defendant no bills for heating oils had been paid for over one year by the plaintiff although funds were provided.
The defendant seems genuinely distressed with regard to the breach that exist between himself and his daughter.
He testified as concerns an occasion where the plaintiff and the defendant were to go out for an evening to a neighborhood home and the daughter representing that certain friends were going to come in their absence apparently misled the defendant and it turned out that a group of young people subsequently arrived with spirits, which caused the defendant great consternation and to which the daughter apparently took rather violent exception.
From the financial affidavits submitted to the court, the court finds as to the plaintiff, as earlier noted, she is employed by Goldblatt and Bokoff, certified public accountants at the present time. Her weekly gross from employment is $315.00; deductions, taxes, medicare and so forth, which appear appropriate, $54.07, for a net of $260.93.
The plaintiff's affidavit reflects the $700.00 a week unallocated alimony and support which she has been receiving by virtue of an earlier order of the court; deductions to the amount of $105.00, for a net weekly income from other sources of $595.00; total net weekly income, $855.93 Total weekly expenses as reflected on her affidavit, $982.62, which include by way of illustration items such as miscellaneous, $50.00; travel, $50.00; gifts, $30.00; counseling fees, $40.00.
Debts reflected on the plaintiff's financial affidavit are to the amount of $2,600.00.
The plaintiff's affidavit with regard to real estate recites the location of the property at 21 Deanna Drive, values it at $158,000.00 with a mortgage of $150,000.00, for an equity of $8,000.00. The testimony however reflects that the entire equity title now stands in the name of the defendant by virtue of a quit claim deed earlier executed by the plaintiff. A 2001 Toyota automobile valued at $12,000.00, no equity. A 1995 Ford Taurus valued at $12,000.00, equity, $12,000.00. Other assets including a Town Car, a mobile trailer, a boat and trailer, valued at $22,500.00. No figure is shown for any monies in the Jewett City Savings and Checking account. The plaintiff's affidavit indicates that her 401K is value unknown. A prospective inheritance as a legatee of her deceased mother's estate of approximately $25,000.00. CT Page 1982
From the defendant's financial affidavit, his occupation is listed as a marketing analyst for ACI Worldwide; gross weekly wage, $3,788.00; deductions, taxes, etc., $1,370.00, for a net of $2,418.00. Weekly expenses totaling $2,136.00 and by way of miscellaneous and gifts, $75.00; charity and tithing, $50.00; entertainment, $28.00 personal grooming, $25.00; cleaning, $45.00.
The defendant shows total debt presently to American Express, Diner's Club and Visa, People's, $4,200.00.
The defendant values the 21 Deanna Drive, Griswold home premises at $157,000.00, mortgage, $149,000.00; $4,000.00 representing his one-half of the equity. He values a 1993 Lincoln Town Car at $8,200.00; $2,000.00 in People's Bank; a 401K plan, $90,783.00 as of July 31, 2000; an IRA, $8,186.00; an anticipated inheritance from his father's estate estimated at $30,000.00.
Schedule A refers to the 1995 Ford Taurus, a 1994 Dodge Dakota and a 1984 Kawasaki, motorcycle presumably, and a 1983 camper. Total value as shown on Schedule A, $15,200.00.
The plaintiff's financial affidavit made no reference of personalty nor jewelry; however, in the jewelry category the testimony was to the effect that it was somewhere between $15,000.00 and $20,000.00 in terms of value.
Plaintiff's Joint Exhibit No. 1, dated January 17, 2001, entitled "Stipulation as to Custody" deals with custody as to the one minor child Christine and the relationship between the parties incident to the child, matters of visitation, a request for a referral to Family Relations to deal with hopefully improving the relationship between the child and her father. The second portion of that joint stipulation refers to an agreement of the parties with regard to certain items of personalty. Joint Exhibit A will be set forth verbatim in the orders of the court.
The only other exhibit, Plaintiff's A, is a card sent to the minor child by the defendant in which reference is made to the untimely passing of the defendant's dog Chips and the defendant's assessment of blame incident thereto.
 Discussion
This is a marriage of 27 years duration. CT Page 1983
There is one minor child, Christine Ploen, now age 17, who is in high school.
The plaintiff is age 45.
The defendant is age 52.
The plaintiff described her health as generally good and her education extended through several years in college in allied courses but apparently not to the extent of actually receiving a college degree.
The defendant's education extended through completing high school, the participation apparently brief in the Wentworth Institute at Boston and no formal education beyond age 20.
The defendant has described his profession as that of a technical troubleshooter in the computer industry.
The plaintiff's claims basically revolve around representations to the effect that the defendant had a violent temper which continued over a relatively long period 01 time. Manifestly on the basis of the testimony, the only physical violence that occurred was 20 years ago and resulted in the plaintiff being slapped in the face.
On the basis of the testimony, it appears that for a very substantial portion of each year, at least during the time of the plaintiff's Present employment, that he was away from the home for as much as 200 days a year and in some instances more than that.
The defendant clearly is a hard worker who has been eminently successful. It would appear that his work is stressful and demanding, that continual travel obligations to many foreign countries exist on a day-to-day basis.
It would appear clearly that the defendant relied on the plaintiff to look after the record keeping, bookkeeping and payment of bills, charges and matters of like nature while he was away incident to his duties and the defendant provided the necessary requisite funds.
It does appear that the opportunities for travel on a regular basis between the plaintiff and the defendant was not overly generous but there was testimony to the effect that the parties had enjoyed trips abroad to various locations.
The plaintiff's claims with regard to the immoderate use of spirits in CT Page 1984 the opinion of the court has not been firmly established. The testimony of Mr. and Mrs. Coughlin is referred to.
It is understandable because of his schedule that the defendant relied on the plaintiff to keep the financial house in order at home and his concern or reactions to her failure to do that is understandable. particularly insofar as the exposure of the family for not having automobile insurance for a period of a year due to the plaintiff not looking after the same and more particularly the problems presented with the Internal Revenue Service and the plaintiff's deception, so to speak, in failing to keep the defendant apprised as concerns obligations or claims by the IRS resulting in the situation described in the findings of fact.
In addition it would appear that substantial credit card interest was incurred by virtue of the plaintiff not carefully looking after the funds made available to her by the plaintiff.
It is particularly distressing that there is such a rift between the defendant and his daughter, who as indicated, appears to be academically brilliant and the defendant can hardly be faulted for trying to guide his daughter in her conduct with regard to teenage friends and the presence of alcoholic spirits in the home.
The defendant has carefully abided by the restraining order. There have been practically no contacts between the plaintiff and the defendant until time of trial and unfortunately this breach has continued with regard to any contacts between the defendant and his minor daughter.
There was no evidence presented to the court with regard to controlled substance abuse, drugs, no abandonment of parental responsibilities and no claim of straying insofar as outside interests on the part of the defendant.
In contrast to the health situation of the plaintiff, the defendant suffers from various cardiac risk factors including high cholesterol, being overweight, high blood pressure, diagnosed heart arrhythmia. Pie has sleeping disorders which manifest itself in apnea and narcolepsy and apparently has been subject to bouts of depression.
The court would be inclined to characterize the defendant's employment activities as his being a workaholic and of course his efforts have produced the financial result earlier noted in the findings of fact.
As earlier indicated, the parties did enter into a stipulation dated CT Page 1985 January 17, 2001, Plaintiff's Joint Exhibit 1, which the court will set forth verbatim in its orders pertaining to custody, visitation and other assets, particularly personal property.
In addition to the health problems noted, the defendant is also on a pharmaceutical regimen as noted.
The defendant's employment as earlier noted is with In Session Technologies, which is a division of Transection Systems Architects, Inc. (TSAI) and as noted there is an annual base salary and a commission arrangement for monies in excess of that amount.
The defendant has properly paid the pendente lite unallocated order and there is no claim that there is any arrearage due.
The exhibits presented in this proceeding were limited. The court was not favored with an independent appraisal of the real estate nor were copies of tax returns presented nor a certificate of title as concerns the exact present status of the marital home.
It would appear and the defendant acknowledged that he has a temper which apparently on occasion would get out of control. In some measure this conduct may have been precipitated by the nature and stress of the defendant's employment, but one must be mindful that for each year during the life of the defendant's present employment, which goes back over ten years, that he is away from the home for more than 200 days a year and therefore manifestly no problems could occur during that time frame and his concern is understandable with regard to the financial details not being properly looked after by the plaintiff, particularly problems with the Internal Revenue Service, which are problems that should not under any set of circumstances be ignored. The defendant at least deserved to have the problems made known to him and not hidden.
 The Law
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) § 46b-62 regarding attorney's fees, § 46b-82 regarding alimony and § 46b-55, § 46b-83 and § 46b-84 as concerns support.
The court has considered all of the applicable case law that govern the matter.
The court has considered the testimony of the parties and their CT Page 1986 witnesses, their candor or lack thereof, and all exhibits and the arguments of counsel.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation and employability of each of the parties. and the estate and needs of the parties.
The court has considered the standards of living of the parties.
As concerns the minor child Christine, the court has considered the child's age, her emotional ties to the plaintiff mother and the rift that exists with the defendant father, the length and intimacy or lack thereof of that association. and the apparent intellectual prowess of the minor daughter.
The court has considered Plaintiff's Joint Exhibit 1 with regard to custody and other issues.
The court has considered the respective financial positions of the plaintiff and the defendant, their prospects for future income and opportunities.
The court has considered the issue of fault.
The Court enters the following orders.
The court accepts the document entitled "Stipulation as to Custody," dated January 17, 2001, signed by the plaintiff and the defendant and the schedule attached thereto.
This stipulation is to the following effect:
The plaintiff shall have sole custody of the minor child Christine Ploen.
She shall keep the defendant informed of Christine's educational progress and medical history and shall inform the defendant of public sporting or school events in which Christine is a participant in sufficient advance of such activities to allow the defendant the opportunity of attending.
She shall give defendant a copy of Christine's school and yearbook photos.
Defendant shall have reasonable rights of visitation with Christine to CT Page 1987 be exercised only with Christine's consent.
The issue of the relationship between the defendant and Christine shall be referred to Family Relations officer Neil McKeever for his review of whether counseling between daughter and father is necessary and feasible, and if so, the identity of the counselor and the extent of counseling that is advisable.
It is the court's hope that the minor daughter Christine can be reconciled with her father, and the plaintiff and the defendant should join in a joint effort to try and see that that is achieved and whatever counseling, joint or sole, that might achieve that purpose should be undertaken.
On the basis of the guideline worksheet provided to the court, the court enters an order of support for the minor child in the amount of $344.00 a week. The guideline worksheet provided by the plaintiff did not disclose her earnings.
The defendant shall maintain health insurance coverage for the benefit of the minor daughter Christine through his employment and any uninsured or uncovered medical or dental expenses shall be apportioned on the basis of 77% to the defendant and 22% to the plaintiff.
The plaintiff mother of course is the primary custodial parent.
In accordance with the provisions of Joint Exhibit No. 1, a certain antique handmade violin reflected on the financial affidavit of the defendant shall be the property of the minor daughter Christine Ploen in trust, so to speak, on condition that the daughter shall not divest herself of said violin until after she has attained age 30.
In further agreement by virtue of the joint exhibit, the following items are to be kept and retained by the plaintiff or quitclaimed to her; to wit, a 1995 Ford Taurus motor vehicle. The plaintiff may retain the Dickens' Village Collection, a laptop computer, a desktop personal computer with color printer, all contents of the family room at the former residence, including stereo, VCR, RCA television, two wall units, furniture as well as kitchen table and six chairs, Bentwood rocker, hope chest, Christine's bedroom set, microwave from kitchen, piano, organ, chest freezer, plaintiff's and Christine's remaining books and personal effects and the plaintiff may retain without any claim by the defendant the prospective inheritance from her mother's estate in an amount not yet determined. CT Page 1988
The defendant, according to the joint exhibit, may retain the equity in the marital homestead, a 1993 Lincoln, a 1994 Dodge Dakota, a camper, the remaining furniture in the Deanna Drive residence. The defendant is to have returned to him his grandmother's diamond ring, and the antique handmade violin now in the plaintiff's possession has already been noted, the same to be set over to the child Christine Ploen.
The defendant to retain free of any claim by the plaintiff any inheritance from his late father's estate.
The plaintiff is to be responsible for the two debts shown on her financial affidavit; to wit, Sears in the amount of $1,100.00 and CitiBank in the amount of $1,500.00.
Mindful of the present status of the real estate known as 21 Deanna Drive and a claim of total equity in said property to the amount of $8,000.00, and even though title has already been set over from the plaintiff to the defendant, the defendant shall pay the plaintiff the sum of $4,000.00 representing her one-half share in said equity.
In addition, aside from the motor vehicles earlier noted, the plaintiff may retain the 2001 Toyota automobile shown on her financial affidavit and be responsible for any debt or obligation incident thereto.
The defendant shall be responsible for the debt shown on his financial affidavit to American Express in the amount of $4,200.00.
The defendant may retain the funds in his People's Bank account as noted on his financial affidavit in the amount of $2,000.00.
As concerns the defendant's 401K plan, the value thereof being shown on his financial affidavit as being in the amount of $90,783.00, the plaintiff shall receive by virtue of a Qualified Domestic Relations Order 60% thereof.
In like manner, the defendant's IRA reflected on his financial affidavit is $8,186.00. The plaintiff shall be entitled to 60% thereof.
The 401K in the name of the plaintiff shown as "value unknown" on her financial affidavit, but the testimony being to the effect that it was worth $200 or $300, may be retained by the plaintiff.
As indicated the defendant may retain the prospective inheritance from his father's estate, estimated on his financial affidavit as being valued at $30,000.00. CT Page 1989
The defendant shall be entitled to the tax exemption for the minor child.
The plaintiff may retain her jewelry, the value thereof being approximately in the area of $15,000.00 to $20,000.00.
The defendant shall cooperate with the plaintiff in assisting her in securing medical and dental health insurance coverage as available to him incident to his employment for the term of three years but at her cost and expense.
The defendant shall keep in full force and effect any existing life insurance with the plaintiff named as beneficiary during the term of alimony payments.
No evidence was offered as to the present amount of said insurance nor was any evidence offered as to the defendant's ability healthwise to presently acquire life insurance or the cost thereof.
The defendant is to hold the plaintiff harmless concerning any existing mortgage debt on the 21 Deanna Drive real estate.
As to the issue of alimony, the court directs that the defendant shall pay to the plaintiff the sum of $1,000.00 a week for a term of five years. The amount may be modifiable but not the term, the same to earlier terminate on the plaintiff's death, remarriage or cohabitation as provided by statute.
Each of the parties shall be responsible for their respective attorney's fees.
The court grants the relief prayed for and dissolves the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried pursuant to the provisions of the statute.
Austin, JTR